UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

DEANDRE GRAY,

                Petitioner,                Case No. 1:09-cv-959

v.                                    Honorable Robert Holmes Bell

CINDI S. CURTIN,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner DeAndre Gray presently is incarcerated at the Kinross Correctional Facility. Following a jury trial in Kalamazoo County Circuit Court, he was convicted on six charges: armed robbery, Mich. Comp. Laws § 750.529; possession of less than 25 grams of cocaine, Mich. Comp. Laws § 333.7403(2)(a)(v); second-degree retail fraud, Mich. Comp. Laws § 750.356d; possession of a firearm by a felon, Mich. Comp. Laws § 750.224; and two counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. On August 21, 2006, he was sentenced as an habitual offender, Mich. Comp. Laws § 769.12, to the following prison terms: 20 to 40 years for the armed robbery, 2 years and 10 months to 15 years for possession of cocaine, 314 days for retail fraud, 4 years and 10 months to 40 years for possession of a firearm as a felon, and 2 years for each conviction of possession of a firearm during the commission of a felony. He was given 314 days of credit for time served in jail, which was applied to his sentence for retail fraud.

Petitioner filed an appeal to the Michigan Court of Appeals and then to the Michigan Supreme Court, raising the same three issues he raises in his habeas petition:

I.     THE DEFENDANT WAS UNLAWFULLY DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN TRIAL COUNSEL FAILED TO RAISE AND PRESERVE AN INSANITY OR TEMPORARY INSANITY DEFENSE.

II.    THE TRIAL COURT UNLAWFULLY VIOLATED THE UNITED STATES AND MICHIGAN CONSTITUTIONS IN SENTENCING THE PETITIONER TO A PRISON TERM OF 20-40 YEARS ON A HABITUAL OFFENDER 4TH SUPPLEMENT ARISING OUT OF THE ARMED ROBBERY CONVICTION, TO A PRISON TERM OF 34 MONTHS TO 15 YEARS ON THE HABITUAL OFFENDER 4TH SUPPLEMENT ARISING OUT OF THE POSSESSION OF LESS THAN 25 GRAMS OF COCAINE CONVICTION, AND TO A PRISON TERM OF 58 MONTHS TO 40 YEARS ON THE HABITUAL OFFENDER 4TH SUPPLEMENT ARISING OUT OF THE FELON IN POSSESSION OF A FIREARM CONVICTION.

III.   THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED RIGHTS UNDER THE U.S. AND MICHIGAN CONSTITUTIONS WHEN IT FAILED/REFUSED TO GRANT HIM ANY JAIL CREDIT AGAINST THE FELONY FIREARM SENTENCE(S).

(*See* Def.-Appellant's Br. on Appeal, docket #17; Pet., docket #1, Page ID##6, 8, 10.) He timely filed the instant action in October 2009, after his appeals were denied.

Respondent has filed an answer to the petition (docket #9) stating that the grounds should be denied because they are procedurally defaulted, they are non-cognizable state law claims, and/or they are meritless. Petitioner has filed a reply to Respondent's answer (docket #20). Upon review and applying the AEDPA standards, I find that Petitioner's claims are without merit. Accordingly, I recommend that the petition be denied.

## **Background**

According to testimony adduced at trial, the state prosecution arose from two incidents in which Petitioner stole coats from the "Fashion Connection" store in Kalamazoo, Michigan. (*See* Tr. II, 184.)[1] On October 8, 2005, Petitioner entered the store, took an $895 leather coat from an upper rack on the wall, put it on, and then walked toward the exit. (*Id.* at 185, 206.) The store owner approached him and asked him where he was going. Petitioner stated that he was "going outside to give a lighter to his friend in the parking lot." (*Id.* at 186.) When the store owner told him not to leave, Petitioner threatened to "shoot" or "pop" him. (*Id.*) Petitioner then left the store with the coat and ran away.

Petitioner returned to the store three days later. The store owner recognized him and asked him why he took the coat. Petitioner stated that he needed money. (*Id.* at 188.) Petitioner then picked up a stool by the counter and used it to reach another coat from the upper rack. A store employee and the owner of the store wrestled Petitioner to the ground to keep him from taking the coat, but Petitioner would not let go of it. Petitioner freed himself from their grasp and then pulled out a gun, pointed it at the store owner, and said, "Don't make me do it." (*Id.* at 189, 190, 228.) The owner ran out of the store to contact the police, and Petitioner left the store with the coat shortly thereafter.

The police identified Petitioner as a suspect. On October 12, 2005, the day after the second theft, officers went to Petitioner's address to interview him. (Tr. III, 315.) They found him outside his house. He agreed to answer their questions on his front porch. (*Id.*) Petitioner initially

---

[1]Petitioner's trial was held on June 27-29, 2006. The transcript for the second day of trial (docket #14) will be referred to as "Tr. II." The transcript for the third day of trial (docket #15) will be referred to as "Tr. III."

denied any involvement in the crime, but then admitted that he took the coats and that he brandished a gun on the second occasion, after a struggle with a store employee. (*Id.* at 317.) Police officers found him to be "very cooperative" at the time of the interview. (*Id.* at 340.) He explained that he took the coats to pay a debt. (*Id.* at 342.) A police detective wrote down a statement recounting Petitioner's version of what occurred, and Petitioner signed it. (*Id.* at 319.) Later that day, Petitioner was arrested and taken into custody. Officers discovered hypodermic needles in his possession, as well as a plastic bag containing a white powdery substance, which was later determined to be cocaine. (*Id.* at 303, 322.) Petitioner was taken to a county jail, where he was given his *Miranda* rights. (Tr. II, 272-73.) He indicated that he understood his rights and he agreed to waive them. (*Id.* at 273.) Petitioner then told police officers that he stole the coats to buy drugs and that he thought he could get them back. (*Id.*)

At the conclusion of the trial, the jury found Petitioner guilty of the aforementioned charges. He was sentenced on August 21, 2006.

Petitioner, through counsel, appealed his judgment of conviction and sentence to the Michigan Court of Appeals, raising the same three issues presented in the application for habeas corpus relief. (*See* Def.-Appellant's Br. on Appeal, docket #17.) His appellate counsel also filed a motion for a remand so that the trial court could hold an evidentiary hearing regarding the allegedly ineffective assistance of Petitioner's trial counsel. The motion was denied on March 16, 2007, "for failure to satisfy the requirements of MCR 7.211(C)(1)." (*People v. Gray*, No. 276292, Mich. Ct. Appeal Ord. Mar. 16, 2007.) Petitioner subsequently filed a *pro per* motion for a remand, which was denied on May 24, 2007, for the same reason as the first motion. Petitioner also filed a *pro per* supplemental brief on appeal raising several issues that are not before the Court. In an unpublished

opinion issued on July 1, 2008, the Michigan Court of Appeals rejected all appellate arguments and affirmed Petitioner's convictions and sentences. (*See* Mich. Ct. Appeal Op. (MCOA Op.), docket #17.)

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, raising the same three claims at issue in the petition. By order entered October 27, 2008, the Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions presented should be reviewed by that court. (*See* Mich. Order, docket #18.)

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).   In determining whether federal law is clearly

established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result, (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case, or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410.

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692

F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Richter*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

      The AEDPA also requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

      Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

<u>Analysis</u>

**I. Claim I: Ineffective assistance of counsel**

Petitioner claims that his trial counsel was ineffective for failing to raise an insanity defense. Petitioner asserts that he is a chronic alcoholic with a long history of substance abuse, and this may have diminished his culpability for the charged offenses. In his motion for a remand, Petitioner's counsel argued that his substance abuse "had or may have had . . . short- and long-term effects on his brain and behavioral control" at the time he committed his offenses, such that he may not have appreciated the "nature and quality or the wrongfulness of his conduct," or retained the ability to "conform his conduct to the requirements of the law." (*See* Mot. for Remand 3, 5, docket #17.) Petitioner conceded that voluntary intoxication is not a defense under Michigan law, but noted that "involuntary" intoxication is a defense "if it puts the defendant in a state of mind equivalent to insanity." *See People v. Wilkins*, 459 N.W.2d 57, 60 (Mich. Ct. App. 1990). Petitioner argued that he may have been involuntarily intoxicated because his addiction to alcohol was so great that "the taking of the first drink is not a matter of choice," and/or because his substance abuse was "grossly excessive" and "he had no reason to know" that he was susceptible to a "psychotic reaction" to the drugs or alcohol that he was consuming. (Mot. for Remand 3-5, docket #17.) *Cf. People v. Caulley*, 484 N.W.2d 853, 859 (Mich. Ct. App. 1992) ("'Involuntary intoxication is intoxication that is not self-induced and by definition "occurs when the defendant does not knowingly ingest an intoxicating substance, or ingests a substance not known to be an intoxicant."'") (quoting *People v. Low*, 732 P.2d 622, 627 (Colo. 1987) (citations omitted)).

The court of appeals denied Petitioner's motion and then rejected Petitioner's ineffective assistance claim on the merits, limiting its review to the available record. (*See* MCOA

Op. 1.)  Applying the standard for ineffective assistance claims set forth in *People v. Toma*, 613

N.W.2d 694 (Mich. 2000),[2] the court reasoned:

> Insanity is an affirmative defense to a criminal prosecution, the presentation of which is governed by MCL 768.21a, which requires proof that "as a result of mental illness . . . or as a result of being mentally retarded" the defendant "lack[ed] substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MCL 768.21a(1). A defendant may have a temporary insanity defense due to involuntary intoxication "when the chemical effects of drugs or alcohol render the defendant temporarily insane." *People v Caulley*, 197 Mich App 177, 187; 494 NW2d 853 (1992). However, a person cannot be legally insane solely because he is under the influence of voluntarily consumed alcohol or controlled substances. MCL 768.21a(2). The defendant has the burden of proving the defense. MCL 768.21a(3). And, counsel's failure to properly prepare a meritorious insanity defense constitutes a denial of effective assistance of counsel, if that failure deprived the defendant of a reasonably likely chance of acquittal. *People v Hunt*, 170 Mich App 1, 13-14; 427 NW2d 907 (1988).
>
> Nothing in the record supports any assertion that defendant was temporarily insane when he committed the instant offenses. Defendant merely speculates that his history of substance abuse "could have" resulted in a form of involuntary intoxication, where defendant lacked the capacity to refrain from ingesting controlled substances, which could be considered insanity. It was defendant's burden to establish the necessary factual predicate of his claim, *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001); *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), and he has completely failed to do so. Further, defendant fails to present any evidence that his substance abuse interfered with his ability to appreciate the wrongfulness of his conduct or to conform his behavior to the law. Simply put, defendant has not shown the existence of a meritorious insanity defense. Therefore, he has not shown that his trial counsel's failure to offer or investigate the defense fell below prevailing professional norms, nor that his counsel's performance affected the outcome of trial. *Toma*, *supra* at 302.

(MCOA Op. 2.)

---

[2]The standard in *Toma*, and the standard recited by the court of appeals in its opinion, is substantially the same as the standard set forth in *Strickland*. *See Toma*, 613 N.W.2d at 302-03 (citing *Strickland*).

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The Court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, Petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 131 S. Ct. at 788 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788.

As indicated by the court of appeals, there is no record evidence that Petitioner was legally insane, *i.e.*, unable to appreciate the wrongfulness of his conduct or to conform his behavior

to the law, when he committed the charged offenses.[3]  Indeed, Petitioner does not even claim that he was, in fact, legally insane when he committed his offenses; instead, he speculates that it might have been the case.  Moreover, the record from his trial refutes any claim that he could not control or appreciate the nature of his conduct.  The day after the second theft, he could recall the events at issue, recount them to the police, and give a reasoned justification for his actions, which was that he needed money.  This was the same justification that he gave to the store owner.  He did not blame his mental state, his history of substance abuse, or the influence of drugs or alcohol.  In addition, when Petitioner committed the charged offenses, his actions were controlled, deliberate, and oriented toward his stated goal.  He specifically selected expensive items to steal from the upper rack at the store.  After meeting some resistance from the store owner when leaving the store on the first occasion, he strategically lied about his intentions in order to avoid a confrontation.  On the second occasion, he returned to the store with a gun to assist him in his effort.  When he met further resistance, he brandished his gun and threatened, "Don't make me do it," strongly suggesting that he understood the wrongfulness of his conduct and could control his actions.  (*See* Tr. II, 189.)  Thus, an insanity defense would have been completely at odds with the evidence presented at trial.  Counsel was not objectively unreasonable for refusing to pursue a fruitless strategy.  Furthermore, Petitioner has not demonstrated that he was prejudiced by counsel's actions.

In short, the court of appeals reasonably determined that Petitioner failed to show that his counsel's decision was objectively unreasonable or that Petitioner was prejudiced by it.  Thus,

---

[3]On appeal, Petitioner offered a Presentence Investigation Report prepared in 2003, almost two years before he committed the charged offenses, which indicates that Petitioner was a regular user of heroin and cocaine, and that he has received treatment for substance abuse, both in prison and on parole.  (10/23/2003 Presentence Investigation Rep. 1, docket #18.)  However, the report does not speak to Petitioner's mental state in 2005.

the state court's decision was not an unreasonable application of *Strickland* or an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).

To the extent that Petitioner seeks an evidentiary hearing in this Court to bolster his ineffective assistance claim, he has not demonstrated that he is entitled to one.  Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "'alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing.'"  *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (quoting *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994)).  "However, a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit." *Id.* In this case, the record clearly indicates that Petitioner's claim is without merit.

### Claim II: Sentencing errors

In Claim II, Petitioner asserts that the trial court violated his constitutional rights when it sentenced him to a prison term of 20 to 40 years for the armed robbery convictions because: (1) it failed to state reasons why the minimum and maximum sentences were proportionate to his offense; (2) it should have departed downward from the state sentencing guidelines to account for his substance abuse; (3) without a more complete assessment of Petitioner's rehabilitative potential, the sentence was not based on accurate information; and (4) the sentence violated the principles of *Blakely v. Washington*, 542 U.S. 296 (2004).

Respondent asserts that Claims II and III are procedurally defaulted; however, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [merits]

question priority, for example, if it were easily resolvable against the habeas petitioner . . . ."
*Lambrix*, 520 U.S. at 525; *cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus
may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies
available in the courts of the State."). In the instant case, the interests of judicial economy are best
served by addressing Claims II and III on the merits.

### 1. Proportionate sentences

Petitioner asserts that the trial court failed to state reasons why his sentences were
proportionate to him and his offenses. The Michigan Court Appeals noted that the requirement to
articulate reasons for imposing a sentence is satisfied where, as in Petitioner's case, the sentencing
court expressly relies on the sentencing guidelines. (MCOA Op. 3 (citing *People v. Conley*, 715
N.W.2d 377 (Mich. Ct. App. 2006).) It also noted that sentences within the applicable guidelines
range are "presumed proportionate." *Id.* (citing *People v. Drohan*, 689 N.W.2d 750 (Mich. Ct. App.
2006)).

In his brief on appeal, Petitioner cited *People v. Lemons*, 562 N.W.2d 447 (Mich.
1997) in support of his argument. (*See* Def.-Appellant's Br. on Appeal 17, docket #17.) That case,
however, does not stand for the proposition that a court must *state reasons* why a sentence is
proportionate. Rather, it applies the requirements for proportionality from *People v. Milbourn*, 461
N.W.2d 1 (Mich. 1990). *See Lemons*, 562 N.W.2d at 458.

According to *Milbourn*, a Michigan sentencing court must exercise its discretion
within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent
of Michigan's legislative scheme of dispensing punishment according to the nature of the offense
and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10. That case, however, is based

on state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). A federal court may grant habeas relief solely on the basis of a violation of federal law and has no power to intervene on the basis of a perceived error of state law. 28 U.S.C. § 2254(a); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, to the extent Petitioner claims that his sentence is not proportionate under *Lemons* or *Milbourn*, his claim is not cognizable in this action.

Moreover, the United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "[O]nly an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentences fall within

the maximum penalty under state law.  Consequently, his sentences do not present an extraordinary case that runs afoul of the Constitution.  His claim, therefore, is not cognizable in these proceedings.

### 2. Failure to depart from the sentencing guidelines.

Petitioner also contends that the trial court should have made a downward departure from the sentencing guidelines to account for his drug addiction and substance abuse.  There is, however, no constitutional right to sentencing based on such factors.  *See Thomas*, 49 F.3d at 261 (noting that "there is no constitutional right to individualized sentencing"); *see also Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature).  Consequently, the trial court's failure to account for his drug addiction and substance abuse does not give rise to a viable claim for habeas relief, as Petitioner's claim is governed completely by state law.

### 3. Inaccurate information at sentencing

Next, Petitioner asserts that the trial court did not have "accurate and complete information" about him during sentencing because it did not fully assess his "rehabilitative potential."  (Pet., docket #1, Page ID#8.)  He argues that the lack of such an assessment resulted in the imposition of a sentence based on "inaccurate information," which violated his right to due process.  (Def.-Appellant's Br. on Appeal 19, docket #17.)

A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude."  *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in  Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the

court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (citing *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found or relied upon by the court at sentencing that were either materially false or based on false information. Petitioner's "rehabilitative potential" is not a fact, nor does Petitioner identify any misconception or fundamental error made by the sentencing court in this regard. The Constitution does not require state courts to give any particular consideration to a defendant's rehabilitative potential. He therefore fails to demonstrate that his sentence violated due process. *See United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

### 4. *Blakely* issues

Petitioner argues that his sentence violated the principles enunciated in *Blakely v. Washington*, 542 U.S. 296 (2004). The state court rejected this claim, holding that *Blakely* does not apply to Michigan's indeterminate sentencing scheme. (MCOA Op. 4 (citing *People v. Drohan*, 715 N.W.2d 778 (Mich. 2006)).)

*Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. The Supreme Court found that this scheme offends the Sixth

Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

The sentencing system in Michigan is unlike that of the State of Washington; the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term, but the maximum term is fixed by law. *See Drohan,* 715 N.W.2d at 789-91 (citing Mich. Comp. Laws § 769.8). Only the minimum sentence is determined by the judge, based on the applicable sentencing guideline range. *Id.*; *see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing Mich. Comp. Laws § 769.34(2)). The *Drohan* court relied in part on *Harris v. United States*, 536 U.S. 545 (2002), in which the Supreme Court held that only factors that increase the *maximum*, as opposed to the minimum, sentence must be proven beyond a reasonable doubt. *See Drohan*, 715 N.W.2d at 784-85 (citing *Harris*, 536 U.S. at 563); *see also Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming dismissal of prisoner's claim because *Blakely* does not apply to Michigan's indeterminate sentencing scheme).

The United States Supreme Court recently overruled *Harris*, holding that any fact that increases a mandatory *minimum* sentence for a crime is also an element that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 133 S.Ct. 2151, 2155, 2157-58 (2013). It is not clear whether *Alleyne* applies to Michigan's sentencing scheme, but even if it does, *Harris* was still good law when Petitioner's conviction became final. A federal district court may only grant habeas relief if it finds that the state court's decision was contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United

States" 28 U.S.C. § 2254(d). "The law in question must have been clearly established at the time the state-court decision became final, not after." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 380 (2000)). Thus, even if *Alleyne* applies, the state court's rejection of Petitioner's *Blakely* claim was not contrary to, or an unreasonable application of, federal law clearly established by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

### Claim III: Jail credit

Finally, Petitioner claims that the trial court violated his right to due process and equal protection when it failed to give him credit against his new sentences for his time spent in jail while awaiting trial. Petitioner asserts that he is entitled to credit under Mich. Comp. Laws § 769.11b against the felony-firearm sentences imposed against him, and he asserts that the failure to grant credit may have violated the Double Jeopardy Clause.

The state court rejected Petitioner's state-law claim, but did not address the constitutional claims. It stated:

> A convicted defendant who served time in jail before sentencing is entitled to credit for time served against the sentence imposed pursuant to MCL 769.11b, if, and only if, he was held because he was denied or was unable to furnish bond. In the instant case, defendant did not initially serve time in jail because of an inability or denial of bond; rather, he was held on a parole detainer. "When a parolee is arrested for a new criminal offense, he is held on a parole detainer until he is convicted of that offense, and he is not entitled to credit for time served in jail on the sentence for the new offense." *People v Seiders*, 262 Mich App 702, 705; 686 NW2d 821 (2004). A parole detainee who is convicted of a new criminal offense is entitled, under MCL 791.238(2), to credit for time served in jail as a parole detainee, but that credit may only be applied to the sentence for which the parole was granted. *People v Stewart*, 203 Mich App 432, 433-434; 513 NW2d 147 (1994); *People v Brown*, 186 Mich App 350, 359; 463 NW2d 491 (1990). In this case, defendant did not initially serve time in jail because of an inability to pay or denial of bond; rather, he was held on a parole detainer. Therefore, he

was not entitled to credit against any of his new sentences. *Stewart*, *supra* at 434.

(MCOA Op. 4.) Although this court is bound by the appellate court's articulation of state law, Petitioner's unaddressed constitutional claims must be addressed *de novo*.

### 1. State Law

Petitioner's assertion that he was entitled to jail credit under Mich. Comp. Laws § 769.11b is a question of state law. "'[F]ederal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. at 67–68. Thus, Plaintiff's state-law claim is not cognizable in these proceedings.

### 2. Double Jeopardy

Petitioner also asserts that he may be entitled jail credit against his new sentences because "it is not clear" whether he received a parole violation hearing after he was arrested; if he did receive such a hearing, he may have been released from any obligation to serve time on his prior sentences. (*See* Pet., docket #1, Page ID#10.) He argues that any time spent in jail after his release should have been credited against his new sentences, to avoid a violation of the Double Jeopardy Clause.

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause protects against "multiple punishments for the same offense." *Pearce*, 395 U.S. at 717. "Because the substantive power to prescribe crimes and determine punishments

- 19 -

is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (citations omitted). If the legislature intended to impose the multiple punishments, the "court's inquiry is at an end" and there is no double jeopardy violation. *Id.* at 499 n.8. In making this determination, this Court is bound by the Michigan courts' interpretation of state law. *See Rodgers v. Bock*, 49 F. App'x 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

As the Michigan Supreme Court explained in *People v. Idziak*, 773 N.W.2d 616 (Mich. 2009), the jail-credit statute does not apply to a parolee who is convicted and sentenced to a new term of imprisonment for a felony committed while on parole because, once arrested in connection with the new felony, the parolee continues to serve out any unexpired portion of his earlier sentence unless and until discharged by the Parole Board. *Id.* at 624. Petitioner was on parole when he committed the charged offenses; he does not contend that his earlier sentence expired or that he was discharged from those sentences while he was in jail awaiting judgment for the new charges. Thus, the Double Jeopardy Clause is not implicated, because multiple punishment has not been imposed for the same offense. Instead, as a matter of state law, the time he spent in custody was considered a continuation of the sentences for which he was on parole. *See Idziak*, 773 N.W.2d at 627-28 (citing Mich. Comp. Laws § 791.238(2)).

### 3. Equal protection

Nor did the asserted failure to grant Petitioner jail credit against his new sentences violate his right to equal protection. The Equal Protection Clause of the Fourteenth Amendment requires that all persons who are similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To withstand Fourteenth Amendment scrutiny,

statutes that do not interfere with fundamental rights or single out suspect classifications must bear only a rational relationship to a legitimate state interest." *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) (citing *City of Cleburne*, 473 U.S. at 440). Prisoners do not constitute a suspect class. *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). In addition, there is no fundamental right at issue. "A prisoner has no right under the federal constitution to earn or receive sentencing credits." *Grays v. Lafler*, 618 F. Supp. 2d 736, 747 (W.D. Mich. 2008) (citing *Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992)).

Legislation which does not classify by race, alienage, national origin, or gender and which does not impinge on personal rights protected by the Constitution need only be rationally related to a legitimate state interest. *Cleburne*, 473 U.S. at 440. In the case of parolees who commit new crimes while serving a term of parole, the State has a legitimate interest in treating parole detainees differently from nondetainees who are awaiting trial for new offenses, because "[parole detainees] owe a debt to society they have not yet fully paid." *People v. Stewart*, 513 N.W.2d 147, 148 (Mich. Ct. App. 1994). It is reasonable to apply time served to a prior sentence because the state has a "legitimate interest in seeing that debt repaid." *Id.* Thus, Petitioner's equal protection claim is also meritless.

### 4. Due process

Petitioner also claims that the failure to give him jail credit violated his right to due process, but he offers no support, legal or otherwise, for this claim. To the extent he claims that he was deprived of a liberty interest in credit against his new sentences, the state court determined that he was not entitled to such credit. Thus, his due process claim is both conclusory and meritless.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.

Dated:  October 28, 2013                                   /s/  Joseph G. Scoville
                                                          United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).